## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RASER TECHNOLOGIES, INC., *et al.*,[1] | Case No. 11-11315 (KJC) |
| Debtors. | (Jointly Administered) |
| WILLIAM GIOVANNIELLO, AS CREDITOR TRUSTEE FOR RASER TECHNOLOGIES, INC., ET AL., | Adv. Pro. No. 13-50989 |
| Plaintiff, | |
| v. | |
| ROCKY MOUNTAIN POWER, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROCKY MOUNTAIN POWER'S MOTION TO DISMISS THE COMPLAINT

Dated:  August 16, 2013

James E. Huggett, Esquire (#3956)
**MARGOLIS EDELSTEIN**
300 Delaware Avenue, Suite 800
Wilmington, DE 19801
Telephone:  (302) 888-1112
Facsimile:  (302) 888-1119
E-mail:  jhuggett@margolisedelstein.com

Conrad K. Chiu, Esq. (to be admitted *Pro Hac Vice*)
**PRYOR CASHMAN LLP**
Madelon A. Gauthier, Esq.
7 Times Square
New York, New York 10036

*Counsel to Rocky Mountain Power, a division of PacifiCorp*

---

[1] The Debtors are the following:  Raser Technologies, Inc., Raser Technologies Operating Company, Inc., Raser Power Systems, LLC, RT Patent Company, Inc., Pacific Renewable Power, LLC, Western Renewable Power, LLC, Intermountain Renewable Power, LLC, Los Lobos Renewable Power, LLC, Columbia Renewable Power, LLC, Truckee Geothermal No. 1 SV-01, LLC, Truckee Geothermal No. 2 SV-04, LLC, Trail Canyon Geothermal No. 1SV-02, LLC, Devil's Canyon Geothermal No. 1 SV-03, LLC, Thermo No. 1 BE-01, LLC, Thermo No. 2 BE-02, LLC, Thermo No. 3 BE-03, LLC, Cricket Geothermal No. 1 MI-01, LLC, Harmony Geothermal  No. 1 IR-01, LLC, Lightning Dock Geothermal HI-01, LLC, and Klamath Geothermal No. 1 KL-01, LLC (collectively, the "Debtors").

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

I. PRELIMINARY STATEMENT ....................................................................................... 1

II. BACKGROUND ............................................................................................................... 2

    A. Nature and Stage of the Proceedings ........................................................................ 2

    B. The Assumption of the Supply Agreement
       by the Debtors as Executory Contract
       Pursuant to Their Confirmed Plan ........................................................................... 4

III. LEGAL STANDARDS .................................................................................................... 5

    A. Motion to Dismiss ...................................................................................................... 5

    B. The Court May Consider the Invoices and the
       Supply Agreement for Purposes of a Motion to Dismiss ......................................... 6

IV. ARGUMENT ................................................................................................................... 8

    A. The Trustee is Precluded From Avoiding and
       Recovering the Alleged Avoidable Transfers ........................................................... 8

       1. Section 365 and Sections 547 and 548 are Mutually
          Exclusive Remedies Under the Bankruptcy Code ............................................ 9

       2. The Alleged Avoidable Transfers Were Made Pursuant
          to the Assumed Supply Agreement and Cannot be Avoided ......................... 14

    B. Section 546(e) of the Bankruptcy Code Bars the Trustee's
       Preference and Constructive Fraudulent Transfer Claims ...................................... 16

       1. The Payments to the Defendant Were Settlement Payments,
          and Transfers Made to a Forward Contract Merchant in
          Connection with a Forward Contract Protected by Section 546(e) .............. 17

       2. The Supply Agreement is a Forward Contract
          and the Defendant is a Forward Contract Merchant ...................................... 18

       3. The Alleged Avoidable Transfers Were Settlement
          Payments Made to a Forward Contract Merchant
          and Transfers Made to a Forward Contract
          Merchant in Connection with a Forward Contract ...................................... 22

i

4.  The Alleged Avoidable Transfers Were "Made by or to"
    a Forward Contract Merchant Protected by Section 546(e)...........................................24

V.  CONCLUSION ...........................................................................................................25

## TABLE OF AUTHORITIES

**CASES**                                                                                        **PAGE(s)**

*2435 Plainfield Avenue, Inc. v. Township of Scotch Plains*
*(In re 2435 Plainfield Avenue)*,
    223 B.R. 440 (Bankr. D.N.J. 1998) ...................................................................................6

*Alberts v. Humana Health Plans, Inc. (In re Greater Southeast*
*Community Hospital Corp.)*,
    327 B.R. 26 (Bankr. D.D.C. 2005) .......................................................................9, 12, 16

*Alvarado v. Walsh (In re LCO Enterprises)*,
    12 F.3d 938 (9th Cir. 1993) ...............................................................................................9, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................2

*BCP Liquidating LLC v. Bridgeline Gas Marketing, LLC (In re Borden Chemicals and*
*Plastics Operating L.P.)*,
    336 B.R. 214 (Bankr. D. Del. 2006) ...................................................................... *passim*

*Barnum v. Millbrook Care Ltd. Partnership*,
    850 F. Supp. 1227 (S.D.N.Y.), *aff'd w'out op.*, 43 F.3d 1458 (2d Cir. 1994)....................7

*Bond v. National Fin. Servs., (In re U.S. Mortgage Corp).*,
    491 B.R. 642 (Bankr. D.N.J. 2013) .................................................................................22

*Buchwald v. Williams Energy Marketing & Trading Co.*
*(In re Magnesium Corp. of America)*,
    460 B.R. 360 (S.D.N.Y. 2011)..........................................................................................23

*In re Clear Peak Energy, Inc. v. Southern California Edison Co. (In re Clear Peak*
    *Energy, Inc.)*,
    488 B.R. 647 (Bankr. D. Ariz. 2013).........................................................................20, 22

*Compton v. InOcean AS (In re MPF Holdings U.S. LLC)*,
    Case No. 08-36084, 2013 Bankr. LEXIS 2534 (Bankr. S.D. Tex. June 21, 2013) .....12, 14

*Conley v. Gibson*,
    355 U.S. 41 (1957)................................................................................................................6

*Cortec Industries, Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)...................................................................................................6

**CASES**                                                                                                          **PAGE(s)**

*Daoud v. City of Wilmington,*
    894 F. Supp. 2d 544 (D. Del. 2012).................................................................6

*Degirolamo v. McIntosh Oil, Co. (In re Laurel Valley Oil Co.),*
    2013 Bankr. LEXIS 896 (Bankr. N.D. Ohio Mar. 5, 2013).......................................16, 22

*Development Specialists, Inc. v. 1114 6ᵗʰ Ave. Co. LLC (In re Coudert Bros. LLP),*
    No. 09 Civ. 5047-DLC, 2009 U.S. Dist. LEXIS 81331 (S.D.N.Y. Sept. 4, 2009),
    *aff'g,* Adv. Proc. No. 08-1418-RDD, Order Granting Motion to Dismiss
    (Bankr. S.D.N.Y. Apr. 20, 2009)............................................................13, 15

*Eastern Air Lines, Inc. v. Insurance Co. of Pa. (In re Ionosphere Clubs, Inc.),*
    85 F.3d 992 (2d Cir. 1996)...............................................................11, 15

*First Capital Asset Management, Inc. v. Brickellbush, Inc.,*
    219 F. Supp. 2d 576 (S.D.N.Y. 2002), *aff'd,* 385 F. 3d 159 (2d Cir. 2004).......................2

*Guiliano v. Almond Investment Co. (In re Carolina Fluid Handling Inter. Holding Corp.),*
    467 B.R. 743 (Bankr. D. Del. 2012), *aff'd,* 2013 U.S. Dist. LEXIS 36752
    (D. Del. Mar. 18, 2013)....................................................................13

*Hayes v. Nano-Tex, Inc. (In re Galey & Lord Inc.),*
    2008 Bankr. LEXIS 4794 (Bankr. N.D. Sept. 30, 2008) ...........................................10, 12

*Hopkins v. First NLC Financial Services, LLC (In re Hopkins),*
    372 B.R. 734 (Bankr. E.D. Pa. 2007) .........................................................7

*Hutson v. E.I. du Pont de Nemours & Co. (In re National Gas Distributors, LLC),*
    556 F.3d 247 (4th Cir. 2009) ...............................................................18

*IT Litigation Trust v. Alpha Analytical Laboratories (In re The IT Group, Inc.),*
    331 B.R. 597 (Bankr. D. Del. 2005) .........................................................14

*In re Italian Cook Oil Corp.,*
    190 F.2d 994 (3d Cir. 1951).................................................................9

*Kaiser Steel Corp. v. Pearly Brewing Co. (In re Kaiser Steel Corp.),*
    952 F.2d 1230 (10th Cir. 1991) .............................................................22

*Kimmelman v. Port Authority of N.Y. & N.J. (In re Kiwi International Air Lines, Inc.),*
    344 F.3d 311 (3d Cir. 2003)..........................................................9, 11, 12

*Kost v. Kozakiewicz,*
    1 F.3d 176 (3d Cir. 1993)...................................................................5

**CASES**                                                             **PAGE(s)**

*Lightfoot v. MXEnergy Electric, Inc. (In re MBS Management Serv., Inc.)*,
    690 F.3d 352 (5th Cir. 2012) .............................................................................16, 20, 22

*Lowenschuss v. Resorts International (In re Resorts International, Inc.)*,
    181 F.3d 505 (3d Cir. 1999)...............................................................................................22

*MMR Holding Corp. v. C & C Consultants (In re MMR Holding Corp.)*,
    203 B.R. 605 (M.D. La. 1996) ..........................................................................................15

*NLRB v. Bildisco & Bildisco*,
    465 U.S. 513 (1984)............................................................................................................9

*Neitzke v. Williams*,
    490 U.S. 319 (1989)............................................................................................................5

*Noble v. ADP, Inc. (In re Jazzland, Inc.)*,
    2004 Bankr. LEXIS 2466 (Bankr. E.D. Dec. 16, 2004) ..................................................11

*Official Committee for Unsecured Creditors v. Aust (In re Network Access
Solutions, Corp.)*,
    330 B.R. 67 (Bankr. D. Del. 2005) ..................................................................................13

*Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*,
    998 F.2d 1192 (3d Cir. 1993).............................................................................................7

*Philip Services Corp. v. Luntz (In re Philip Services, Inc.)*,
    284 B.R. 541 (Bankr. D. Del. 2002), *aff'd*, 303 B.R. 574 (D. Del. 2003)....................9, 14

*Piecknick v. Pennsylvania*,
    36 F.3d 1250 (3d Cir. 1994)...............................................................................................5

*Pryor v. NCAA*,
    288 F.3d 548 (3d Cir. 2002)...............................................................................................7

*In re Refco, Inc. Securities Litigation*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007)................................................................................2

*In re Southern Montana Electric Generation and Transmission Cooperative , Inc.*,
    Case No. 11-62031-11, 2013 Bankr. LEXIS 62 (Bankr. D. Mont. Jan. 8, 2013)..............20

*In re Superior Toy Manufacturing Co.*,
    78 F.3d 1169 (7th Cir. 1996) ................................................................................ *passim*

**CASES** PAGE(s)

*U.S. Bank N.A. v. Plains Marketing Can. LP (In re Renew Energy LLC),*
    463 B.R. 475 (Bankr. W.D. Wis. 2011)....................................................16, 18

*Weinman v. Allison Payment System, LLC (In re Centrix Finance, LLC),*
    434 B.R. 880 (Bankr. D. Colo. 2010) ................................................13, 15, 16

*Williams v. Morgan Stanley Capital Group Inc. (In re Olympic Natural Gas Co.),*
    294 F.3d 737 (5th Cir. 2002) ............................................................18, 21, 23

*Young v. West Coast Industrial Relations Association, Inc.,*
    763 F. Supp. 64 (D. Del. 1991), *aff'd w'out op.*, 961 F.2d 1570 (2d Cir. 1992) ................6

**STATUTES**

Del. St. Tit. 6 § 1304 ...........................................................................................1, 8

Del. St. Tit. 6 § 1305 ...........................................................................................1, 8

Fed. R. Civ. P. 12(b)(6)......................................................................................5, 6, 7

11 U.S.C. § 101 et seq.........................................................................................1, 2

11 U.S.C. § 101(25)...........................................................................................20, 21, 22

11 U.S.C. § 101(25)(A)......................................................................................19

11 U.S.C. § 101(51A)........................................................................................22, 23, 24

11 U.S.C. § 101(26)...........................................................................................19, 22

11 U.S.C. § 365 ...................................................................................................*passim*

11 U.S.C. § 365(a) ............................................................................................5, 10

11 U.S.C. § 365(b)(1).........................................................................................10

11 U.S.C. § 503(b)(9).........................................................................................20

11 U.S.C. § 544...................................................................................................1, 8, 13, 16

11 U.S.C. § 546(e) .............................................................................................*passim*

11 U.S.C. § 547...................................................................................................*passim*

**STATUTES**                                                          **PAGE(s)**

11 U.S.C. § 547(b) ..................................................................................10, 12

11 U.S.C. § 547(b)(5) ...................................................................................14

11 U.S.C. § 548 ..............................................................................1, 13, 16

11 U.S.C. § 548(a)(1)(A) ..............................................................................17

11 U.S.C. § 548(a)(1)(B) ................................................................................8

11 U.S.C. § 549 ............................................................................................11

11 U.S.C. § 550 ..............................................................................................1

11 U.S.C. § 551 ..............................................................................................1

11 U.S.C. § 761(4) ........................................................................................20

**TREATISES**

3 Collier on Bankruptcy P 365.02[2][a] (16th ed. rev. 2013).......................13

5 Collier on Bankruptcy P 556.02[2] (16th ed. rev. 2013) ....................20, 21

**LAW JOURNAL ARTICLE**

V. Countryman, *Executory Contracts in Bankruptcy; Part I,* 57 Minn. L. Rev. 439
(1973) ............................................................................................................13

# I.    PRELIMINARY STATEMENT

This is an action that should never have been filed.  The Trustee[2] asserts preferential and fraudulent transfer claims, under federal and state law, to avoid and recover payments that were made prior to the Debtors' bankruptcy filings to Rocky Mountain Power, a division of PacifiCorp (the "Defendant"), in connection with a prepetition agreement entered into between the Defendant and one of the Debtors.  But those payments are precisely the sorts of transfers— payments made to a forward contract merchant in connection with a forward contract or in settlement of forward contract transactions—that cannot be avoided under federal law where, as here, the transferor files for bankruptcy, causing the Bankruptcy Code and its safe harbor under Section 546(e) to apply.  Indeed, this is exactly the kind of action that Congress sought to bar through Section 546(e).  The Trustee, however, now seeks to avoid the very same transfers that he is precluded from pursuing in direct contravention of Section 546(e) of the Bankruptcy Code.

The Trustee's claims fail for an additional reason as well.  The payments that the Trustee now seeks to avoid were made to the Defendant pursuant to and under an executory contract which the Debtors ultimately assumed as part of their plan of reorganization.  In connection with the Debtors' decision to assume that executory contract, the Defendant was assured of future performance under such contract and that all defaults thereunder would be cured.  Despite receiving such assurances and the Defendant's obligation to continue to perform under the executory contract, the Trustee now seeks to avoid and recover the very same payments that this Court already required to be paid under federal law.  Permitting the avoidance and recovery of the transfers sought by the Trustee would undermine the intent of Congress and the purpose

---

[2]  All capitalized words not otherwise defined herein shall have the meanings ascribed to them in the Complaint to Avoid and Recover Avoidable Transfers Pursuant to 11 U.S.C. §§ 544, 547, 548, 550 and 551 and Del. St. Tit. 6, §§ 1304 and 1305 (the "Complaint"), dated April 29, 2013 (D.I. 1 in Adv. Pro. No. 13-50989).

1

behind the Bankruptcy Code.  Because the executory contract was assumed by the Debtors, the Trustee is now precluded from avoiding the payments previously made under the assumed contract.  Allowing any other result would be manifestly unjust and inconsistent with the purpose behind Section 365 of the Bankruptcy Code.

For these reasons and as demonstrated in further detail below, the Trustee's claims must fail as a matter of law and the Complaint should be dismissed with prejudice.

## II.    BACKGROUND

The following is a recitation of the pertinent facts as set forth in and related to the transactions described in the Complaint and documents referenced therein, as well as a description of the relevant events that have occurred in the Debtors' bankruptcy cases and this Adversary Proceeding.[3]

### A.    Nature and Stage of the Proceedings

On April 29, 2011 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").  *See* Main Case D.I. 1.  On or about August 1, 2011, the Debtors filed the Third Amended Joint Plan of Reorganization of Raser Technologies, Inc. and its Affiliated Debtors (the "Plan").  *See* Main Case D. I. 338.  A true and correct copy of the Plan is also attached as Exhibit "A" to the accompanying Declaration of James E. Huggett in Support of Defendant Rocky Mountain Power's Motion to Dismiss the Complaint (the "Huggett Declaration") and is

---

[3]  Although the Court generally must accept as true all well-pleaded factual allegations for the purposes of this motion, it need not accept conclusory allegations that are contradicted, or rendered implausible by, more specific allegations in the Complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 667-68 (2009).  The Court may take judicial notice of filings from the Debtors' bankruptcy cases, as well as the pleadings in this and related litigation pending in this Court. *See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576, 585 (S.D.N.Y. 2002), *aff'd*, 385 F. 3d 159 (2d Cir. 2004).  The Court may also consider, on this motion to dismiss, documents that are referenced in the Complaint. *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 623 (S.D.N.Y. 2007).

incorporated herein by reference.  In connection with their Plan, on or about August 24, 2011, the Debtors filed the Plan Supplement with respect to Third Amended Joint Plan of Reorganization of Raser Technologies, Inc. and its Affiliated Debtors (the "Plan Supplement"). *See* Main Case D.I. 372.  A true and correct copy of the Plan Supplement is also attached as Exhibit "B" to the Huggett Declaration and is incorporated herein by reference.  On or about August 30, 2011, the Court entered the Findings of Fact, Conclusions of Law and Order Confirming the Third Amended Plan of Reorganization of Raser Technologies, Inc. and its Affiliated Debtors (the "Confirmation Order"), whereby the Court approved and confirmed the Plan.  *See* Main Case D.I. 401.  A true and correct copy of the Confirmation Order is also attached as Exhibit "C" to the Huggett Declaration and is incorporated herein by reference.  On September 9, 2011, the Debtors filed the Notice of the Effective Date of the Third Amended Plan of Reorganization of Raser Technologies, Inc. and its Affiliated Debtors (the "Notice"), whereby they provided notice that the Plan became effective on September 9, 2011 (the "Effective Date"). *See* Main Case D.I. 421.  A true and correct copy of the Notice is also attached as Exhibit "D" to the Huggett Declaration and is incorporated herein by reference.

In accordance with the confirmed Plan, the Creditors Trust was established and the Trustee is the duly appointed trustee of the Creditors Trust, with the authority to pursue all of the Debtors' Avoidance Actions.  Compl. ¶ 7.  *See* Plan § 6.6.  On or about April 29, 2013, the Trustee commenced this Adversary Proceeding by the filing of the Complaint against Defendant. A true and correct copy of the Complaint is attached as Exhibit "E" to the Huggett Declaration and is incorporated herein by reference.  The Trustee's Complaint is an action seeking, *inter alia*, the avoidance and recovery of certain alleged preferential and constructive fraudulent transfers

3

made by the Debtors to the Defendant during the 90-Day Period (the "<u>Alleged Avoidable Transfers</u>").  *See* Compl. *generally*.

B.   **The Assumption of the Supply Agreement**
     **by the Debtors as an Executory Contract**
     **<u>Pursuant to Their Confirmed Plan</u>**

Prior to the Petition Date and the commencement of this Adversary Proceeding, at the request of one or more of the Debtors, the Defendant, a utility company, agreed to provide electrical services to the Debtors.  Compl. ¶ 15.  In order to memorialize the Defendant's agreement to provide specific electrical services to the Debtors and the business transactions entered into between them, on or about June 4, 2009, the Defendant and Intermountain Renewable Power, LLC, one of the debtors in the jointly administered bankruptcy cases of the Debtors, entered into a Master Electric Service and Facilities Improvements Agreement (the "<u>Supply Agreement</u>"), whereby the Defendant agreed to sell and supply retail electric energy to the Debtors in accordance with the terms of the Supply Agreement.  A true and correct copy of the Supply Agreement (without attachments) is attached as Exhibit "F" to the Huggett Declaration and is incorporated herein by reference.  *See* Compl. ¶¶ 15, 19, 28, 38, 48.  In exchange for the Defendant's agreement to supply retail electric energy to the Debtors, the Debtors agreed to make certain monthly payments to the Defendant, based on invoices sent by the Defendant, in accordance with the terms of the Supply Agreement.  *See* Compl. ¶ 15.  Supply Agreement §§ 7.01, 7.02, 7.03, 7.04.  The Supply Agreement commenced on June 4, 2009 and continues in effect for a period not less than ten years and is automatically renewed from year to year unless written termination is provided by one party to the other.  Supply Agreement § 2.01. The Alleged Avoidable Transfers that are the subject of the Complaint and the Trustee's asserted claims constitute payments received by the Defendant pursuant to the Supply Agreement and

4

certain invoices issued by the Defendant (the "<u>Invoices</u>") under the Supply Agreement for electrical services provided by the Defendant thereunder.  True and correct copies of the Invoices are attached as Exhibit "G" to the Huggett Declaration and are incorporated herein by reference. *See* Compl. ¶¶ 15, 16.

In accordance with their confirmed Plan and the Plan Supplement, the Debtors assumed the Supply Agreement as an executory contract under § 365(a) of the Bankruptcy Code.  *See* Plan ¶ 7.1 and Plan Supplement, Exhibit No. 13, page 1.  The Debtors' assumption of the Supply Agreement under their confirmed Plan was approved by the Court as part of the Confirmation Order and became effective upon the occurrence of the Effective Date.  *See* Confirmation Order ¶ 52 and Notice.  The Trustee is now seeking to avoid and recover as Avoidable Transfers the payments made by the Debtors to the Defendant, purportedly during the 90-Day Period, pursuant to the Invoices, as well as the Supply Agreement which the Debtors previously assumed as an executory contract as part of their confirmed Plan.

### III.   <u>LEGAL STANDARDS</u>

### A.   <u>Motion to Dismiss</u>

A motion under Rule 12(b)(6) serves to test the sufficiency of the factual allegations in a complaint.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir. 1994).  The Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation

& quotations omitted).  Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 46-47 (1957).  The burden of demonstrating that the plaintiff has failed to state a claim upon which relief may be granted rests on the movant.  *Young v. West Coast Indus. Relations Ass'n, Inc.*, 763 F. Supp. 64, 67 (D. Del. 1991), *aff'd w'out op.*, 961 F.2d 1570 (2d Cir. 1992) (citations omitted).  As demonstrated below, the Complaint fails to meet this standard and should be dismissed.

**B.** **The Court May Consider the Invoices and the**
**Supply Agreement for Purposes of a Motion to Dismiss**

A defendant may attach to a Rule 12(b)(6) motion any documents referred to in the complaint to show that the documents do not support a plaintiff's claim, without triggering a conversion of a Rule 12(b)(6) motion to a Rule 56 summary judgment motion.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."); *2435 Plainfield Ave., Inc. v. Township of Scotch Plains (In re 2435 Plainfield Ave.)*, 223 B.R. 440, 448 (Bankr. D.N.J. 1998) (citations omitted).  In reviewing a motion to dismiss, "[a] court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference." *Daoud v. City of Wilmington*, 894 F. Supp. 2d 544, 550 (D. Del. 2012) (citations omitted).  "'[D]ocuments whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered. . . Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court.'"

6

*Hopkins v. First NLC Fin. Servs., LLC (In re Hopkins),* 372 B.R. 734, 740 n.2 (Bankr. E.D. Pa. 2007) (quoting *Pryor v. NCAA,* 288 F.3d 548, 560 (3d Cir. 2002)); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196-97 (3d Cir. 1993).

When a plaintiff alleges a claim based on a written instrument but fails to attach that written instrument, the court may disregard allegations in the complaint that are contradicted by those written instruments when presented by the defendant on a Rule 12(b)(6) motion. *Barnum v. Millbrook Care Ltd. P'ship,* 850 F. Supp. 1227, 1232-33 (S.D.N.Y.), *aff'd w'out op.*, 43 F.3d 1458 (2d Cir. 1994) (allowing reference to instruments supplied by defendants in support of their Rule 12(b)(6) motion to dismiss) (citations omitted). Allowing admission of documents relied upon in the complaint prevents a plaintiff with a legally deficient claim from surviving a motion to dismiss by failing to attach a dispositive document. *White Consol. Indus.*, 998 F.2d at 1196-97 (allowing admission of a purchase and sale agreement by defendant where complaint is based on the contract but plaintiff did not attach it to the complaint).

In the Complaint, the Trustee alleges that the Defendant provided electrical services to the Debtors on an account in the name of one of the Debtors, and issued invoices for such services. Compl. ¶¶ 15, 16. The Trustee also alleges that the Alleged Avoidable Transfers were paid to the Defendant on account of such services, as evidenced by the invoices. *Id*. It is further alleged by the Trustee that the Debtors and Defendant engaged in business transactions pursuant to which certain Debtors became indebted to the Defendant and made the Alleged Avoidable Transfers on or within the 90-Day Period. *See* Compl. ¶¶ 15, 16, 19, 28, 38, 48. The Trustee, however, failed to attach the Invoices, specifically referenced in the Complaint, or the Supply Agreement, upon which the Invoices, account and business transactions referred to in the Complaint are based, as exhibits to the Complaint. The account referenced by the Trustee in the

7

Complaint, the Invoices issued by the Defendant on such account and the payments made pursuant to the Invoices all directly relate to the Supply Agreement which was assumed by the Debtors.   Importantly, the Trustee's Avoidable Transfers claims all relate to payments made pursuant to the Invoices that were issued by the Defendant.   Compl. ¶ 16.   Those Invoices emanate from the Supply Agreement.   Conveniently, neither the Invoices, nor the Supply Agreement is annexed as an exhibit to the Complaint.   The Invoices, as well as the substance of the Supply Agreement, which directly relate to the Invoices, are referred to in the Complaint and central to the Trustee's claims.   As such, because the Trustee references and premises his avoidance claims on the payments made pursuant to the Invoices issued by the Defendant in connection with the account relating to the Supply Agreement, the Court should and must consider the Invoices and the Supply Agreement in deciding the Motion.   As demonstrated below, upon consideration of the assumed Supply Agreement, it is evident that the Trustee's claims should be precluded and must be dismissed as a matter of law.

## IV.    ARGUMENT

### A.    The Trustee is Precluded From Avoiding and Recovering the Alleged Avoidable Transfers

The Debtors' assumption of the Supply Agreement pursuant to § 365 of the Bankruptcy Code precludes, as a matter of law, a finding that the Alleged Avoidable Transfers are preferential payments pursuant to § 547 of the Bankruptcy Code or fraudulent conveyances pursuant to § 548(a)(1)(B) of the Bankruptcy Code and Del. St. Tit. 6 §§ 1304 and 1305, as incorporated by § 544 of the Bankruptcy Code.   The claims asserted by the Trustee against the Defendant all emanate and relate directly to payments made under the Supply Agreement.   Since the Supply Agreement was assumed by the Debtors pursuant to their confirmed Plan, the Trustee

is now precluded from avoiding and recovering any and all payments received by the Defendant under the Supply Agreement.  For this reason, the Complaint should be dismissed with prejudice.

### 1. Section 365 and Sections 547 and 548 are Mutually Exclusive Remedies Under the Bankruptcy Code

Courts across the Circuits have regularly and uniformly maintained that once a trustee or a debtor-in-possession obtains an order authorizing the assumption of an executory contract or unexpired lease under § 365 of the Bankruptcy Code, a trustee's avoidance claims may not be pursued.  *In re Superior Toy Mfg. Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996); *Kimmelman v. Port Auth. of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.),* 344 F.3d 311, 318 (3d Cir. 2003); *Alvarado v. Walsh (In re LCO Enters.)*, 12 F.3d 938, 940 (9th Cir. 1993).  *See also*, *Philip Servs. Corp. v. Luntz* (*In re Philip Servs., Inc.*), 284 B.R. 541, 553 (Bankr. D. Del. 2002), *aff'd*, 303 B.R. 574 (D. Del. 2003).  The simple reason for this conclusion is that the assumption of an executory contract carries with it all of the benefits and burdens of that contract, including the requirements that all defaults be cured and that future performance under the contract be assured.  *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (citing *In re Italian Cook Oil Corp.*, 190 F.2d 994, 996 (3d Cir. 1951)).  Allowing payments previously made under such an assumed contract to be subject to a trustee's avoidance powers would be entirely inconsistent with having accepted the burdens of the assumed contract and the obligation to fully perform under that contract.  *Alberts v. Humana Health Plans, Inc. (In re Greater Southeast Cmty. Hosp. Corp.)*, 327 B.R. 26, 31 (Bankr. D.D.C. 2005).

Section 365 of the Bankruptcy Code authorizes a trustee or a debtor-in-possession exercising the powers of a trustee to assume or reject any executory contract or unexpired lease

of the debtor, subject to court approval.  11 U.S.C. § 365(a)[4].  As a condition to assuming an executory contract, the debtor must cure all defaults and provide the counterparty to the contract with some assurance of its future performance.  11 U.S.C. § 365(b)(1)[5].  Section 365 was clearly intended "to insure that a contracting party is made whole before a court can force the party to continue performing with a bankrupt debtor."  *In re Superior Toy,* 78 F.3d at 1174.  The cure requirement under § 365(b)(1) "protects the creditor, but §365 also ensures that the debtor will be protected by requiring that the creditor continue performing under the contract."  *Hayes v. Nano-Tex, Inc. (In re Galey & Lord Inc.),* 2008 Bankr. LEXIS 4794 at *16 (Bankr. N.D. Sept. 30, 2008).  The contracting party must continue to perform under the contract and in return, will be entitled to payments of all amounts due him under the contract up until the time of assumption.  *In re Superior Toy,* 78 F.3d at 1172.

The avoidance powers under § 547[6] of the Bankruptcy Code authorize a trustee to recover certain preferential transfers made by a debtor prior to its bankruptcy filing.  The purpose of this section is "to facilitate the prime bankruptcy policy of equality of distribution among creditors of

---

[4] Section 365(a) provides:
(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
[5] Section 365(b)(1) provides:
(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee –
(A) cures, or provides adequate assurance that the trustee will promptly cure, such default…;
(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such a contract or lease, for any actual pecuniary loss to such party resulting from such default; and
(C) provides adequate assurance of future performance under such contract or lease.
[6] The avoidance power under § 547(b) of the Bankruptcy Code provides that,
(b) Except as provided in subsection (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made -
        (A) on or within 90 days before the date of the filing of the petition;…
    (5) that enables such creditor to receive more than such creditor would receive if –
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

the debtor." *In re Kiwi*, 344 F.3d at 316 (citation & quotations omitted). However, it is contrary to both the purpose and fairness inherent in the Code to permit a trustee to pursue a claim to avoid a payment as a preference under § 547 which simultaneously deprives a contracting party of the guarantee it received of future performance under § 365, as well as the assurance given to such contracting party that all defaults have been cured. "If Congress had intended to deprive contracting parties of monies they received prepetition, why would Congress require that all defaults be cured prior to assumption?" *In re Superior Toy,* 78 F.3d at 1174. It is anathema that a bankrupt debtor or trustee can assume an executory contract, enjoy its benefits, and then compel return of the payments the debtor made pursuant to the contract. *Eastern Air Lines, Inc. v. Insurance Co. of Pa.* (*In re Ionosphere Clubs, Inc.)*, 85 F.3d 992 (2d Cir. 1996) (citations omitted). To allow a trustee to attack the prior payments made under the assumed contract would be fundamentally inconsistent with Congress' intent that a contracting party whose contract is assumed or assumed and assigned pursuant to section 365 should be made whole prior to being forced into fully performing. "A party to an executory contract must be paid all amounts due him under the contract before the contract may be assumed…Permitting a preference suit after an assumption order would undermine that purpose." *In re Superior Toy,* 78 F.3d at 1174.

This inconsistency between Sections 547 and 365 of the Code [and the bar on ensuing avoidance claims] has been thoroughly explained by *Superior Toy* and followed by its progeny in other Circuits, including the Third Circuit. *See In re Kiwi*, 344 F.3d at 318; *Noble v. ADP, Inc. (In re Jazzland, Inc.)*, 2004 Bankr. LEXIS 2466, at *8 (Bankr. E.D. Dec. 16, 2004) ("The estate

cannot become bound to pay amounts due under an assumed contract and also recover for the estate payments made prepetition under the contract."); *Compton v. InOcean AS (In re MPF Holdings U.S. LLC)*, Case No. 08-36084, 2013 Bankr. LEXIS 2534 (Bankr. S.D. Tex. June 21, 2013). The Ninth Circuit highlighted the obvious conflict between the two sections and dismissed a preference action stating, "[t]he trustee cannot use [section] 547(b) to circumvent the [cure] requirements of [section] 365(b)." *In re LCO Enters.*, 12 F.3d at 943. Likewise, the Third Circuit upheld the '*Kiwi* defense' that section 547(b) cannot be satisfied if during the case an executory contract was assumed. *In re Kiwi,* 344 F.3d 311. "[T]he trustee's preference actions against each of the defendants was precluded as a matter of law by the debtor's earlier assumption of its agreements with them…" *Id.* at 323 (affirming dismissal of trustee's preference claims against creditors of debtor airline which had obtained court approval under 365 to assume and assign executory contracts in order to keep airline operations running). *See also*, *In re Galey & Lord, Inc*., 2008 Bankr. LEXIS 4794 (granting summary judgment to defendant on Trustee's alleged preference payments made on chemical supply contracts which had been integrated into Debtor's assumed license agreement).

This limitation on a trustee's avoidance power with respect to payments made on an assumed contract is not just limited to actions for the avoidance of preferential payments, but also applies to claims for the avoidance of purported fraudulent transfers. "The power to avoid payments that were made under an executory contract and the power to assume the executory contract are plainly mutually exclusive remedies without the necessity of such an express statement." *In re Greater Southeast*, 327 B.R. at 31 (extending the defense to all avoidance

actions, including fraudulent conveyances under Section 548[7]).   The "Contract Assumption Defense", raised as an affirmative defense in *In re Centrix*, holds that it is a bar not only to preference claims, but to all of a trustee's avoidance powers, including those found in §§ 544, 548, and 549.  *Weinman v. Allison Payment Sys., LLC (In re Centrix Fin., LLC)*, 434 B.R. 880, 888 (Bankr. D. Colo. 2010) (recognizing the defense as a complete bar to a Trustee's avoidance powers).  *See also, Development Specialists, Inc. v. 1114 6th Ave. Co. LLC (In re Coudert Bros. LLP)*, No. 09 Civ. 5047-DLC, 2009 U.S. Dist. LEXIS 81331 (S.D.N.Y. Sept. 4, 2009), aff'g Adv. Proc. No. 08-1418-RDD, Order Granting Motion to Dismiss (Bankr. S.D.N.Y. Apr. 20, 2009); *Official Comm. for Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.)*, 330 B.R. 67, 76 (Bankr. D. Del. 2005).

Hence, in the instant case, the only question that remains after *Kiwi* and *Superior Toy* is whether the Supply Agreement was in fact, assumed or assumed and assigned.  Since the answer to the preceding question is undoubtedly yes[8], the Trustee is precluded from avoiding the Alleged Avoidable Transfers and the Complaint must fail as a matter of law.  *Guiliano v. Almond Inv. Co. (In re Carolina Fluid Handling Inter. Holding Corp.)*, 467 B.R. 743, 751 (Bankr. D. Del. 2012), *aff'd*, 2013 U.S. Dist. LEXIS 36752 (D. Del. Mar. 18, 2013) (granting summary judgment against trustee on avoidance of preferential payments and finding no material fact as to

---

[7] Section 548 provides in pertinent part:
(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation;…
[8] The Supply Agreement clearly satisfies the *Countryman* definition of an executory contract where the obligations "of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other."  V. Countryman, *Executory Contracts in Bankruptcy; Part I*, 57 Minn. L. Rev. 439, 460 (1973).  An executory contract is a contract "on which performance remains due to some extent on both sides," 3 *Collier on Bankruptcy* P 365.02[2][a] at 365-16 (16th ed. 2013) (citation & quotations omitted).  However, the issue of whether the Supply Agreement is an executory contract is now moot as the Debtors assumed such Agreement under their confirmed Plan.

whether supply agreement was executory contract assumed by Debtors).  "[W]e conclude that once an executory contract is assumed, the trustee or debtor may not maintain a preference action to recover payments made prepetition pursuant to that contract."  *In re Philips*, 284 B.R. at 553. *See also IT Litigation Trust v. Alpha Analytical Labs (In re The IT Group, Inc.)*, 331 B.R. 597, 601 (Bankr. D. Del. 2005) (Because "assumption effectively transforms the other contracting party from a general unsecured creditor to a priority administrative claimant", a trustee is precluded from satisfying the requirements of 547(b)(5).); *In re MPF Holdings U.S.*, 2013 Bankr. LEXIS 2534, at *45 (If the "Contract was assumed pursuant to section 365, the contract assumption defense bars the [ ] Trustee from pursuing the instant preference action").

### 2. The Alleged Avoidable Transfers Were Made Pursuant to the Assumed Supply Agreement and Cannot be Avoided

The Trustee's avoidance powers are barred because the Alleged Avoidable Transfers were made pursuant to the assumed Supply Agreement.  The Alleged Avoidable Transfers were clearly payments made to the Defendant under the assumed Supply Agreement and pursuant to the Invoices issued by the Defendant thereunder.  *See* Compl., Invoices, Supply Agreement. There can be no dispute that the Debtors assumed the Supply Agreement pursuant to § 365 of the Bankruptcy Code as part of their confirmed Plan.  *See* Plan ¶7.1 and Plan Supplement, Exhibit No. 13, page 1.  Allowing the Trustee to now avoid and recover the Alleged Avoidable Transfers that were made to the Defendant on account of the assumed Supply Agreement would be entirely inconsistent with the assumption remedy previously sought and obtained by the Debtors (and approved by this Court) and undermine the very purpose behind § 365 of the Code.  In exchange for being compelled to continue performing under the Supply Agreement, the Defendant was assured of future performance under the assumed Supply Agreement and that all defaults thereunder would be cured.  The Defendant would lose those assurances and protections while

14

still be required to perform under the assumed Supply Agreement if the Trustee were allowed to pursue his avoidance claims.  The Bankruptcy Code certainly did not intend this result.  The Debtors' estates have already been enriched by the assumption of the Supply Agreement and all defaults under such Agreement been cured; the Trustee cannot now seek to recover the Alleged Avoidable Transfers that were already required to be paid to the Defendant under § 365 of the Bankruptcy Code.  *In re Centrix*, 434 B.R. at 887.

Permitting avoidance and recovery of the Alleged Avoidable Transfers would fly in the face of the purpose behind § 365 – to make the Defendant whole, and would deprive it of the assurance of future performance that it received.  *In re Coudert Bros.,* 2009 U.S. Dist. LEXIS 81331, at *9 (where debtor tries to avoid a contract it previously assumed, dismissal of the avoidance action is warranted).  *See also*, *MMR Holding Corp. v. C & C Consultants* (*In re MMR Holding Corp.)*, 203 B.R. 605, 613 (M.D. La. 1996) ("[P]repetition payments, which might otherwise be recoverable as preferences, are not recoverable preferences if the contract upon which the payments are based is assumed pursuant to § 365 … ").  It would be manifestly unjust to allow the Debtors to retain the benefit conferred by assumption of its contract with Defendant and require Defendant's continued performance under the Supply Agreement, but nevertheless allow the Trustee to recover amounts that had been required to have been paid to Defendant under § 365.

The clear precedent established from *Superior Toy* to *Kiwi* instructs that the Trustee's avoidance and assumption powers are mutually exclusive.  Once the Supply Agreement was assumed by the Debtors, all prior payments made under that executory contract may not be attacked on any ground.  *See In re Ionosphere Clubs,* 85 F.3d at 1000 ("an assumption order divests the trustee of subsequent claims to monies paid under the contract whether they were

paid prepetition or postpetition") (quoting *In re Superior Toy*, 78 F.3d at 1174).   To decide otherwise would be fundamentally inconsistent with Congress' intent that a contracting party whose contract is assumed or assumed and assigned pursuant to § 365 should be "made whole prior to being forced into fully performing." *In re Centrix,* 434 B.R. at 886.   The Trustee's claims for Avoidable Transfers are precluded and must fail as a matter of law because no avoidance action, under §§ 544, 547 or 548, can arise from an assumed executory contract. *In re Greater Southeast*, 327 B.R. 26*; In re Centrix,* 434 B.R. 880.

**B.      Section 546(e) of the Bankruptcy Code Bars the Trustee's**
**Preference and Constructive Fraudulent Transfer Claims**

        This is one of the classic cases that Congress enacted Section 546(e) of the Bankruptcy Code to prevent.   The Trustee seeks to avoid and recover cash payments paid to the Defendant, before the commencement of the Debtors' bankruptcy cases, pursuant to a contract whereby the Defendant agreed to sell and supply retail electric energy to the Debtors.   These are classic "settlement payments" made to a forward contract merchant that are protected from avoidance by Section 546(e) of the Bankruptcy Code.   Even if held not to be "settlement payments", the payments in question are still protected from avoidance under Section 546(e) of the Bankruptcy Code as they were transfers made to a forward contract merchant (Defendant) in connection with a forward contract (Supply Agreement).   Courts have routinely applied Section 546(e) to bar the avoidance of settlement payments made to a forward contract merchant and transfers made to a forward contract merchant in connection with a forward contract.   *See, e.g.*, *Lightfoot v. MXEnergy Electric, Inc.* (*In re MBS Mgmt. Serv., Inc.)*, 690 F.3d 352 (5th Cir. 2012); *U.S. Bank N.A. v. Plains Mktg. Can. LP (In re Renew Energy LLC),* 463 B.R. 475 (Bankr. W.D. Wis. 2011); *Degirolamo v. McIntosh Oil, Co. (In re Laurel Valley Oil Co.)*, 2013 Bankr. LEXIS 896 (Bankr. N.D. Ohio Mar. 5, 2013).   This case is no different.   The Alleged Avoidable Transfers

cannot be avoided because they were settlement payments and transfers made prior to the Petition Date to a forward contract merchant and in connection with a forward contract. Section 546(e) of the Bankruptcy Code provides a safe harbor that specifically prevents the Trustee from avoiding the Alleged Avoidable Transfers. For these reasons, the Complaint should be dismissed as a matter of law.

1. **The Payments to the Defendant Were Settlement Payments,**
   **and Transfers Made to a Forward Contract Merchant in**
   **Connection with a Forward Contract Protected by Section 546(e)**

Section 546(e) of the Bankruptcy Code, entitled "Limitations on avoiding powers," provides a safe harbor that precludes the avoidance of certain settlement payments and transfers as preferential and constructive fraudulent transfers under both the Bankruptcy Code and state law as incorporated by Section 544 of the Bankruptcy Code[9]. Section 546(e) states:

> *Notwithstanding sections 544*, 545, *547*, *548(a)(1)(B)*, and 548(b) of this title, *the trustee may not avoid a transfer that is a* margin payment, as defined in section 101, 741, or 761 of this title, or *settlement payment, as defined in section 101 or 741 of this title*, *made by or to* (or for the benefit of) *a* commodity broker, *forward contract merchant*, stockbroker, financial institution, financial participant, or securities clearing agency, *or that is a transfer made by or to* (or for the benefit of) *a* commodity broker, *forward contract merchant*, stockbroker, financial institution, financial participant, or securities clearing agency, *in connection with a* securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or *forward contract, that is made before the commencement of the case*, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e) (emphases added). In enacting § 546(e), Congress sought to protect forward contract merchants, such as the Defendant, and forward contracts, such as the Supply Agreement, in order to provide stability to the commodities market. *BCP Liquidating LLC v.*

---

[9] § 546(e) cannot be asserted as a defense to claims for intentional fraud under § 548(a)(1)(A) of the Bankruptcy Code.

*Bridgeline Gas Mktg., LLC* (*In re Borden Chems. and Plastics Operating L.P.*), 336 B.R. 214, 223 (Bankr. D. Del. 2006); *Hutson v. E.I. du Pont de Nemours & Co. (In re National Gas Distribs., LLC)*, 556 F.3d 247, 252 (4th Cir. 2009). As the Supply Agreement clearly fits within the plain language of the Bankruptcy Code's provisions providing protections for forward contracts, and thereby correspondingly to forward contract merchants, the Defendant should be afforded the shield of § 546(e), as a forward contract merchant, to preclude the Trustee's avoidance of the Alleged Avoidable Transfers.

Under the plain wording of the statute, the Trustee's Avoidable Transfers claims are precluded by § 546(e) on two independent bases, either of which would suffice. First, the transfers of cash that the Trustee seeks to avoid are unavoidable "settlement payments" made "by or to" a "forward contract merchant". Second, the transfers were made "by or to" a "forward contract merchant" "in connection with a … forward contract". For these reasons, the Complaint should be dismissed. *See In re Renew Energy*, 463 B.R. at 482.

### 2.    The Supply Agreement is a Forward Contract and the Defendant is a Forward Contract Merchant

"Section §546(e) of the Code provides forward contract merchants with a complete defense to avoidance claims brought by a Trustee." *Williams v. Morgan Stanley Capital Group Inc. (In re Olympic Natural Gas Co.)*, 294 F.3d 737, 740 (5th Cir. 2002) (citing 11 U.S.C. § 546(e)). In order to qualify for the exemption provided by § 546(e) of the Bankruptcy Code, the Defendant must establish that it is a "forward contract merchant," and that either the transfer sought to be avoided was a "settlement payment" or a transfer made in connection with a "forward contract". Here, the Defendant can establish that it is a "forward contract merchant" and that the Alleged Avoidable Transfers were "settlement payments" and transfers it received,

made in connection with a "forward contract".   As such, the Trustee's Avoidable Transfers claims are precluded and must fail.

The Defendant is a forward contract merchant because it entered into a forward contract with one of the debtors.  The Bankruptcy Code defines a "forward contract merchant" as "… an entity the business of which consists in whole or in part of entering into forward contracts as or with merchants in a commodity (as defined in section 761) or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade."  11 U.S.C. § 101(26).   In turn, a "forward contract" is defined as "a contract (other than a commodity contract as defined in section 761) for the purchase, sale or transfer of a commodity, as defined in section 761(8) of this title, or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade, or product or byproduct thereof, with a maturity date more than two days after the date the contract is entered into…"  11 U.S.C. § 101(25)(A).  Thus, in order to assert the safe harbor defense under § 546(e), the Defendant must first establish that it is a forward contract merchant.  In the instant case, because the Supply Agreement between the Defendant and debtor Intermountain Renewable Power, LLC is a forward contract, the Defendant is able to demonstrate that it is a forward contract merchant that is eligible to assert the complete § 546(e) defense to the Trustee's avoidance claims.

The terms of the Supply Agreement are consistent with the Bankruptcy Code's definition of a "forward contract".  The transactions subject to the Supply Agreement clearly fall within the scope of the Bankruptcy Code's definition of "forward contract" under § 101(25).  Pursuant to the Supply Agreement, the Defendant agreed to sell and supply retail electric energy to the Debtors.  *See* Supply Agreement, *generally*.  Thus, the services that the Defendant agreed to

19

provide under the Supply Agreement certainly follow the Code's definition of "forward contract" ("a contract for the … sale… of a commodity). 11 U.S.C. § 101(25). Moreover, various courts have held that contracts for the purchase, sale or transfer of electricity qualify as forward contracts. *See In re MBS Mgmt.*, 690 F.3d 352*; Clear Peak Energy, Inc. v. Southern Cal. Edison Co. (In re Clear Peak Energy, Inc.),* 488 B.R. 647, 658 (Bankr. D. Ariz. 2013). *See also*, *In re Southern Montana Electric Generation and Transmission Coop., Inc*., Case No. 11-62031-11, 2013 Bankr. LEXIS 62 (Bankr. D. Mont. Jan. 8, 2013) (electricity bought and sold in the marketplace qualifies as a good for purposes of the UCC and the Bankruptcy Code, specifically within § 503(b)(9) claim). The Supply Agreement is also for a term of not less than ten years which satisfies the requirement under § 101(25) that forward contracts have a maturity date more than two days after the contract is entered into. Supply Agreement § 2.01. Thus, the terms of the Supply Agreement clearly tract the definition of a "forward contract" under the Bankruptcy Code.

The Supply Agreement also qualifies as a "forward contract" based upon the guidelines and definitions adopted and followed by courts in this district. Collier defines "forward contracts" as "contracts for the future purchase or sale of commodities that are *not* subject to the rules of a contract market or board of trade." 5 *Collier on Bankruptcy* P 556.02 [2], at 557-8 (16th ed. rev. 2013) (emphasis added). This is in contrast to the definition of "commodity contracts"[10] as contracts for the purchases and sales of commodities for future delivery on, or subject to the rules of, a contract market or board of trade, and leverage transactions. *Id*. at 556-5. Courts in this district have followed the Colliers' definition of "forward contracts" in drawing a distinction between "forward contracts" and "commodity contracts". *See In re Borden,*

---

[10]  The Bankruptcy Code defines "commodity contract" in § 761(4) to include futures contracts that are traded on exchanges.

336 B.R. 214.  In reaching that conclusion, courts have agreed that the commodities market is essentially divided into two categories:  (1) on-exchange commodity contracts; and (2) off-exchange forward contracts.  *Id.* at 218;  *See In re Olympic*, 294 F.3d at 74.  In *Borden*, the Delaware Bankruptcy Court agreed with the Fifth Circuit's holding from *In re Olympic Natural Gas* that distinguished an off-exchange forward contract from an on-exchange commodities contract.  *In re Borden*, 336 B.R. at 218 (The Court also noted that one of the distinguishing characteristics of a forward contract is that the parties expect to make actual delivery).  In reaching that decision, the Delaware Bankruptcy Court essentially concluded that the parenthetical in § 101(25)[11] reinforces the commonly understood distinction between on-and off-exchange transactions, where forward contracts encompass contracts for the future purchase or sale of commodities that are *not* subject to the rules of a contract market or board of trade, and commodity contracts are subject to an exchange or traded market.  *Id*.  *See In re Olympic,* 294 F.3d at 741.  "'Thus, 'the terms commodity contract' and forward contract,' taken together, seamlessly cover the entirety of transactions in the commodity and forward contract markets, whether exchange-traded, regulated, over-the-counter or private.'"  *In re Borden*, 336 B.R. at 218 (quoting *Collier*, *supra* at 556-5).  Here, the Supply Agreement does not involve an on-exchange contract that is subject to the rules of a contract market or board of trade.  It is simply an off-exchange contract between two parties concerning a transaction for the sale of retail electric energy.  Accordingly, based upon the distinction drawn by courts in this district between "forward contracts" and "commodity contracts", the Supply Agreement is clearly consistent with the definition of a "forward contract" adhered to by these courts.

---

[11] "a contract (other than a commodity contract as defined in section 761)…"

The Supply Agreement further fits within the Bankruptcy Code's definition of a "forward contract" as it provides for the sale of a commodity. Several courts have held that electricity constitutes a commodity for purposes of a forward contact. *In re MBS Mgmt.*, 690 F.3d 352 (a contract for the supply of electricity held to be forward contract); *In re Clear Peak Energy, Inc.*, 488 B.R. 647 (a contract for provision of electricity and construction of energy facility held to be a forward contract). Since the Supply Agreement involves the sale of electricity by the Defendant, it clearly falls within the definition of "forward contract" under § 101(25) of the Bankruptcy Code. *See* Supply Agreement, *generally*. As the Supply Agreement comes within the scope of Bankruptcy Code § 101(25)'s definition of a "forward contract", it seemingly follows that the Defendant is a "forward contract merchant" under § 101(26) of the Code and is entitled to the safe harbor protections under § 546(e).

### 3.    The Alleged Avoidable Transfers Were Settlement Payments Made to a Forward Contract Merchant and Transfers Made to a Forward Contract Merchant in Connection with a Forward Contract

The Alleged Avoidable Transfers made to the Defendant pursuant to the Invoices and the Supply Agreement constituted "settlement payments," which the Bankruptcy Code broadly defines as "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, a net settlement payment, or *any other similar payment commonly used in the forward contract trade*." 11 U.S.C. § 101(51A) (emphasis added). Courts have routinely held that "settlement payment" should be interpreted very broadly. *Lowenschuss v. Resorts Int'l (In re Resorts Int'l, Inc.)*, 181 F.3d 505, 515 (3d Cir. 1999); *Bond v. National Fin. Servs., (In re U.S. Mortgage Corp.)*, 491 B.R. 642 (Bankr. D.N.J. 2013); *Kaiser Steel Corp. v. Pearly Brewing Co.* (*In re Kaiser Steel Corp.*), 952 F.2d 1230, 1240 (10th Cir. 1991); *In re Laurel Valley*, 2013 Bankr. LEXIS 896, at *14, *15

("Courts interpreting the definition of settlement payment in § 101(51A) have applied it broadly").  Courts have often adopted and applied that broad interpretation of "settlement payment" in the context of payments made pursuant to forward contracts.  *In re Olympic*, 294 F.3d at 742.  *See also Buchwald v. Williams Energy Mktg. & Trading Co. (In re Magnesium Corp. of Am.)*, 460 B.R. 360, 375 (S.D.N.Y. 2011) ("Since by definition [forward contracts] will not be traded on exchanges and they will normally involve a greater degree of one-on-one dealings than exchange-traded contracts will, it is not unreasonable to consider 'settlement payments' to cover one-on-one payments to meet such forward contracts' financial obligations").  In *Olympic*, the United States Court of Appeals for the Fifth Circuit held that payments made pursuant to a forward contract were "settlement payments" as defined in Bankruptcy Code § 101(51A).  *In re Olympic*, 294 F.3d at 742.  Consistent with the broad interpretation of "settlement payments" adopted by other courts, the Fifth Circuit stated that "the definition of 'settlement payment' in 101(51A) encompasses payments made in settlement of forward contract transactions…"  *Id*.  Here, the Alleged Avoidable Transfers received by the Defendant were payments made in accordance with the Invoices issued by the Defendant pursuant to the Supply Agreement for services provided by the Defendant thereunder.  In short, the Alleged Avoidable Transfers to the Defendant were unquestionably "settlement payments" within the meaning of §§ 101(51A) and 546(e) of the Bankruptcy Code.

While the Court need not reach the issue, the Alleged Avoidable Transfers to the Defendant pursuant to the Supply Agreement also fall within § 546(e)'s safe harbor on the separate and independent ground that they were "transfer[s] made by or to…a…forward contract merchant … in connection with a … forward contract."  11 U.S.C. § 546(e).  In the unlikely event that the Court were to hold that the Alleged Avoidable Transfers were not "settlement

payments" within the definition of § 101(51A), they clearly were still transfers made to a forward contract merchant (Defendant) in connection with a forward contract (Supply Agreement). Hence, by reason of § 546(e) of the Bankruptcy Code, the Trustee cannot seek avoidance of the Alleged Avoidable Transfers on two independent bases- (1) the Alleged Avoidable Transfers were settlement payments made to a forward contract merchant; and (2) the Alleged Avoidable Transfers were made to a forward contract merchant in connection with a forward contract. For either or both reasons, the Trustee's Complaint must be dismissed.

**4. The Alleged Avoidable Transfers Were "Made by or to"
a Forward Contract Merchant Protected by Section 546(e)**

The settlement payments and transfers to the Defendant also satisfy the requirement under § 546(e) that the payments be "made by or to" a forward contract merchant. Here, there is no question that the Alleged Avoidable Transfers were made directly to the Defendant pursuant to the Invoices and the Supply Agreement. It is also uncontroverted that the Alleged Avoidable Transfers involve transfers made before the commencement of the Debtors' cases. Thus, the settlement payments and transfers that the Trustee seeks to avoid were clearly made "by or to" a protected entity, and may not be avoided under the plain terms of § 546(e).

## V.   CONCLUSION

Based on the foregoing, the Complaint fails to state a claim upon which relief can be granted.  As such, the Complaint should be dismissed with prejudice.

Dated:  August 16, 2013
Wilmington, Delaware

                    Respectfully submitted,
                    **MARGOLIS EDELSTEIN**

                    /s/ James E. Huggett
                    James E. Huggett, Esq. (#3956)
                    300 Delaware Avenue, Suite 800
                    Wilmington, DE 19801
                    Telephone:  (302) 888-1112
                    Facsimile:  (302) 888-1119
                    E-mail:  jhuggett@margolisedelstein.com

                          -AND-

                    **PRYOR CASHMAN LLP**
                    Conrad K. Chiu, Esq. (to be admitted *Pro Hac Vice*)
                    Madelon A. Gauthier, Esq.
                    7 Times Square
                    New York, New York 10036

                    *Counsel to Rocky Mountain Power, a division of PacifiCorp*